DOCUMENT 2

FILED
2020 Sep 23 AM 10:06
U.S. DISTRICT COURT
N.D. OF ALABAMA

ELECTRONICALLY FILED
8/21/2020 10:36 PM
01-CV-2020-902974.00
CIRCUIT COURT OF
JEFFERSON COUNTY, ALABAMA
JACQUELINE ANDERSON SMITH, CLERK

**IN THE CIRCUIT COURT FOR JEFFERSON COUNTY, ALABAMA**

EXHIBIT 1

**SUE MCCRIMMON, By And Through**
**LEEANN NEWTON, Daughter And Next Friend,**
**And DANIEL MCCRIMMON**

**Plaintiffs**

**v.** **CIVIL ACTION NO.:**

**JURY TRIAL DEMANDED**

**Depuy, Inc.;**
**Depuy International Limited;**
**Depuy Synthes Products, LLC;**
**Depuy Orthopaedics, Inc.;**
**Johnson & Johnson;**
**Johnson & Johnson Services, Inc.;**
**Johnson & Johnson International;**
**Andrew Cook;**
**Mike Lillie;**

A, whether singular or plural, that hospital, clinic, or other health care facility which undertook to provide medical services to SUE MCCRIMMON (hereinafter referred to as "PATIENT"), on the occasion made the basis of this suit, the negligence, breach of contract, or other actionable conduct of which contributed to Plaintiffs' injuries;
B, whether singular or plural, that entity which undertook to provide medical-diagnostic, -rehabilitative, -technical, or —therapeutic services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract, or other actionable conduct of which, contributed to cause Plaintiffs' injuries;
C, whether singular or plural, that medical partnership, professional association, or professional corporation which undertook to provide medical services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of which contributed to cause Plaintiffs' injuries;
D, whether singular or plural, that person who, as an owner, stockholder, partner, associate, employee, or agent of any of the fictitious parties described above in items A through C, inclusive, undertook to provide health care or related services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of which contributed to cause Plaintiffs' injuries;
E. whether singular or plural, that physician (including an intern, resident, or fellow), who undertook to provide medical services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiffs' injuries;
F, whether singular or plural, that nurse, who undertook to provide medical services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiffs' injuries;

G, whether singular or plural, that medical services therapist, technician, or worker who undertook to provide medical services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiffs' injuries;
H, whether singular or plural, that student health care practitioner who undertook to provide medical services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiffs' injuries;
I, whether singular or plural, that entity/entities which designed, developed or manufactured any HIP IMPLANT DEVICE, PRODUCT OR COMPONENT placed in the PATIENT which contributed to cause Plaintiffs' injuries on the occasion made the basis of this suit;
J, whether singular or plural, that entity/entities which in anywise participated in any testing or misrepresentation as to testing and safety of any HIP IMPLANT DEVICE, PRODUCT OR COMPONENT placed in the PATIENT which contributed to cause Plaintiffs' injuries, on the occasion made the basis of this suit;
K, whether singular or plural, that entity/entities which had any role in the distribution, sale or marketing of any HIP IMPLANT DEVICE, PRODUCT OR COMPONENT placed in the PATIENT which contributed to cause Plaintiffs' injuries on the occasion made the basis of this suit;
L, whether singular or plural, that entity/entities which, concerning the occasion made the basis of this suit, was the principal of any of the named or above-described fictitious party defendants;
M, whether singular or plural, that entity/entities which is the successor-in-interest of any of the named or above-described fictitious party defendants; and
N, whether singular or plural, that person or those persons who acted as agents and representatives of any of the named and fictitious party defendants involved in any way in fraudulent, improper, "off label" or "financial" transactions or communications with doctors and hospitals involved in placing any HIP IMPLANT DEVICE, PRODUCT OR COMPONENT in PATIENT whereby they withheld or misrepresented information as to defects or dangers in said HIP IMPLANT DEVICE, PRODUCT OR COMPONENT, urged/advocated/induced/caused "off label" use of said HIP IMPLANT DEVICE, PRODUCT OR COMPONENT and/or provided financial or other inducement to hospitals and doctors to use said HIP IMPLANT DEVICE, PRODUCT OR COMPONENT in surgery on PATIENT;
O, whether singular or plural, that entity, other than those described above, the negligence, breach of contract, or other wrongful conduct of which contributed to cause Plaintiffs injuries on the occasion made the basis of this suit. (Plaintiff avers that the identity of the fictitious party defendants is otherwise unknown to Plaintiff at this time, or, if their names are known to Plaintiff at this time, their identity as proper party defendants is not known to Plaintiff at this time; but their true names will be substituted by amendment when the aforesaid lacking knowledge is ascertained).

**Defendants.**

## COMPLAINT

## COUNT I

1. Between 2006 and 2009, Sue McCrimmon

(PATIENT) underwent hip implant/replacement surgeries in Birmingham, Alabama at Trinity Medical Center/Grandview Medical Center by Stephen Cowley MD which resulted in the placement of DePuy HIP IMPLANT DEVICES, PRODUCTS OR COMPONENTS in her body and right hip. At said time, said HIP IMPLANT DEVICES, PRODUCTS OR COMPONENTS was/were defective and unsafe and this information was known to the Defendants **Depuy, Inc.; Depuy International Limited; Depuy Synthes Products, LLC; Depuy Orthopaedics, Inc.; Johnson & Johnson; Johnson & Johnson Services, Inc.; Johnson & Johnson International; Andrew Cook; and/or Fictitious Defendants I, J, K, L, M, N or O;** and was knowingly and fraudulently withheld from PATIENT, Plaintiffs, the public and the medical profession. Furthermore, the said Defendants knowingly and fraudulently engaged in improper actions, financial transactions and/or communications to induce physicians to undertake "off label" use of said HIP IMPLANT DEVICES, PRODUCTS OR COMPONENTS and/or to mislead physicians into using their products when said products were defective and unsafe.

a. Said HIP IMPLANT DEVICES, PRODUCTS OR COMPONENTS were designed, developed, tested, manufactured, sold, marketed and/or distributed by the defendants **Depuy, Inc.; Depuy International Limited; Depuy Synthes Products, LLC; Depuy Orthopaedics, Inc.; Johnson & Johnson; Johnson & Johnson Services, Inc.; Johnson & Johnson International; Andrew Cook; and/or Fictitious Defendants I, J, K, L, M, N or O;**

2. On or about AUGUST 21, 2018, SEPTEMBER 4, 2018 and August 10, 2020, Sue McCrimmon was compelled to undergo surgeries to attempt removal of said defective and unsafe HIP IMPLANT DEVICES, PRODUCTS OR COMPONENTS at UAB Medical Center in Birmingham, Alabama by Herrick Siegel MD due to particle disease, metallosis, infections and osteolysis resulting from their unsafe and defective condition. Said products remained in PATIENT'S body and were not removed completely until August 10, 2020 and continued to cause injuries and complications to PATIENT up until and after AUGUST 10, 2020. Those injuries and complications included particle disease, metallosis, infections and osteolysis.

3. From at least 2006 until August 10, 2020, the defendants **Depuy, Inc.; Depuy International Limited; Depuy Synthes Products, LLC; Depuy Orthopaedics, Inc.; Johnson & Johnson; Johnson & Johnson Services, Inc.; Johnson & Johnson International; Andrew Cook; and/or Fictitious Defendants I, J, K, L, M, N or O** have continued to knowingly and fraudulently conceal and withhold information as to the defective and unsafe conditions of their products and to misrepresent the safety of their products and the absence of a causative connection between their implant products and injuries to patients who have such products implanted in them. The Plaintiffs were not aware of, and could not have been aware of, the defective and unsafe condition of the products until on or after August 10, 2020.

4. Defendants A, B, C, D, E, F, G, H, I, J, K, L, M and N, whose more correct names and identities are unknown to Plaintiff but will be correctly named and identified when ascertained, are the respective entities or persons who or which fit the descriptions below:

A, whether singular or plural, that hospital, clinic, or other health care facility which

undertook to provide medical services to SUE MCCRIMMON (hereinafter referred to as "PATIENT"), on the occasion made the basis of this suit, the negligence, breach of contract, or other actionable conduct of which contributed to Plaintiffs' injuries;

B, whether singular or plural, that entity which undertook to provide medical-diagnostic, -rehabilitative, -technical, or —therapeutic services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract, or other actionable conduct of which, contributed to cause Plaintiffs' injuries;

C, whether singular or plural, that medical partnership, professional association, or professional corporation which undertook to provide medical services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of which contributed to cause Plaintiffs' injuries;

D, whether singular or plural, that person who, as an owner, stockholder, partner, associate, employee, or agent of any of the fictitious parties described above in items A through C, inclusive, undertook to provide health care or related services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of which contributed to cause Plaintiffs' injuries;

E. whether singular or plural, that physician (including an intern, resident, or fellow), who undertook to provide medical services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiffs' injuries;

F, whether singular or plural, that nurse, who undertook to provide medical services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiffs' injuries;

G, whether singular or plural, that medical services therapist, technician, or worker who undertook to provide medical services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiffs' injuries;

H, whether singular or plural, that student health care practitioner who undertook to provide medical services to PATIENT on the occasion made the basis of this suit, the negligence, breach of contract or other actionable conduct of whom contributed to cause Plaintiffs' injuries;

I, whether singular or plural, that entity/entities which designed, developed or manufactured any HIP IMPLANT DEVICE, PRODUCT OR COMPONENT placed in the PATIENT which contributed to cause Plaintiffs' injuries on the occasion made the basis of this suit;

J, whether singular or plural, that entity/entities which in anywise participated in any testing or misrepresentation as to testing and safety of any HIP IMPLANT DEVICE, PRODUCT OR COMPONENT placed in the PATIENT which contributed to cause Plaintiffs' injuries, on the occasion made the basis of this suit;

K, whether singular or plural, that entity/entities which had any role in the distribution, sale or marketing of any HIP IMPLANT DEVICE, PRODUCT OR COMPONENT placed in the PATIENT which contributed to cause Plaintiffs' injuries on the occasion made the basis of this suit;

L, whether singular or plural, that entity/entities which, concerning the occasion made the basis of this suit, was the principal of any of the named or above-described fictitious party defendants;

M, whether singular or plural, that entity/entities which is the successor-in-interest of any of the named or above-described fictitious party defendants; and

N, whether singular or plural, that person or those persons who acted as agents and representatives of any of the named and fictitious party defendants involved in any way in fraudulent, improper, "off label" or "financial" transactions or communications with doctors and hospitals involved in placing any HIP IMPLANT DEVICE, PRODUCT OR COMPONENT in PATIENT whereby they withheld or misrepresented information as to defects or dangers in said HIP IMPLANT DEVICE, PRODUCT OR COMPONENT, urged/advocated/induced/caused "off label" use of said HIP IMPLANT DEVICE, PRODUCT OR COMPONENT and/or provided financial or other inducement to hospitals and doctors to use said HIP IMPLANT DEVICE, PRODUCT OR COMPONENT in surgery on PATIENT;

O, whether singular or plural, that entity, other than those described above, the negligence, breach of contract, or other wrongful conduct of which contributed to cause Plaintiffs injuries on the occasion made the basis of this suit. (Plaintiff avers that the identity of the fictitious party defendants is otherwise unknown to Plaintiff at this time, or, if their names are known to Plaintiff at this time, their identity as proper party defendants is not known to Plaintiff at this time; but their true names will be substituted by amendment when the aforesaid lacking knowledge is ascertained).

5. Plaintiffs allege that the conduct of each and all of the named and fictitious party defendants, including the above described fictitious party defendants combined and concurred and proximately caused the PLAINTIFFS' INJURIES up to, on and after AUGUST 10, 2020 as hereinafter alleged in Paragraph 34.

**COUNT II**
**AEMLD, CONTRACT AND PRODUCT LIABILITY**

6. Plaintiffs incorporate by reference and reallege all allegations and contentions heretofore pled in the complaint is if fully set out herein.
7. Between 2006 and 2020, and for some time prior to and thereafter, the Defendants **Depuy, Inc.; Depuy International Limited; Depuy Synthes Products, LLC; Depuy Orthopaedics, Inc.; Johnson & Johnson; Johnson & Johnson Services, Inc.; Johnson & Johnson International; Andrew Cook; and/or Fictitious Defendants I, J, K, L, M, N or O** listed and described in the caption hereof, were engaged in the business of formulating, designing, developing, manufacturing, producing, marketing, selling and/or distributing the HIP IMPLANT DEVICES, PRODUCTS OR COMPONENTS (hereinafter referred to as the "device/equipment/system") and/or its component parts throughout the United States, including the State of Alabama, for use by certain members of the general public. Said defendants during said period of time and for a valuable consideration developed, designed, manufactured, leased, sold and/or distributed the said equipment/system and/or its component parts involved in the occurrence made the basis of this suit. At the aforesaid time and place, the said device/equipment/system and/or its component parts were in substantially the same condition as when manufactured, sold and/or distributed, and was being used in a manner that was foreseeable. The said device/equipment/system and/or its component parts were not reasonably safe when

being used in a foreseeable manner, but to the contrary, were defective and unreasonably dangerous to the human body when being so used. Said defendants knew, or in the exercise of reasonable care should have known, that said device/equipment/system and/or its component parts were unreasonably dangerous to the human body when being so used in a foreseeable manner. The foregoing wrongful conduct of said defendants was a proximate cause of the plaintiff's injuries and damages and renders said defendants liable to plaintiff pursuant to the Alabama Extended Manufacturer's Liability Doctrine.

a. In the event the said named and fictitious party defendants were not the original designers, manufacturers or, distributors of said device/equipment/system and/or its component parts, they are liable as the predecessors or successors of the original designers, manufacturers or distributors.

8. The defendants **Depuy, Inc.; Depuy International Limited; Depuy Synthes Products, LLC; Depuy Orthopaedics, Inc.; Johnson & Johnson; Johnson & Johnson Services, Inc.; Johnson & Johnson International; Andrew Cook; and/or Fictitious Defendants I, J, K, L, M, N or O** listed and described in the caption hereof, negligently or wantonly formulated, developed, manufactured, leased, sold and/or distributed the said device/equipment/system and/or its component parts involved in the occurrence made the basis of plaintiff's complaint, and said negligent and wanton conduct was a proximate cause of the plaintiff's injuries and damages herein described. Furthermore, they are liable as the original formulators, developers, manufacturers, sellers or distributors or as the predecessors or successors of the original formulators, developers, manufacturers, sellers or distributors of said device/equipment/system and/or its component parts.

9. The defendants and/or fictitious party defendants **Depuy, Inc.; Depuy International Limited; Depuy Synthes Products, LLC; Depuy Orthopaedics, Inc.; Johnson & Johnson; Johnson & Johnson Services, Inc.; Johnson & Johnson International; Andrew Cook; and/or Fictitious Defendants I, J, K, L, M, N or O** as listed and described in the caption hereof as the formulators, developers, manufacturers, distributors, lessors and/or sellers of the said device/equipment/system and/or its component parts involved in the occurrence made the basis of plaintiff's complaint, negligently, wantonly or knowingly failed to warn the plaintiff of the dangers associated with the use of the aforesaid device/equipment/system and/or its component parts and actively concealed the defective and unsafe condition of their products and said conduct was a proximate cause of the plaintiff's injuries and damages.

10. Said named and/or fictitious party defendants **Depuy, Inc.; Depuy International Limited; Depuy Synthes Products, LLC; Depuy Orthopaedics, Inc.; Johnson & Johnson; Johnson & Johnson Services, Inc.; Johnson & Johnson International; Andrew Cook; and/or Fictitious Defendants I, J, K, L, M, N or O** listed and described in the caption hereof, were in the business of leasing, selling or distributing the said device/equipment/system and/or its component parts in the State of Alabama and said defendants were merchants with respect to such goods. At the time of the aforesaid, the defendants knew or had reason to know the particular purpose for which the said device/equipment/system and/or its component parts were to be used, and the defendants

knew or had reason to know that plaintiff was relying on the skill and judgment of the defendants and in fact relied on said skill and judgment at the time the said device/equipment/system and/or its component parts was used. Defendants thereby impliedly warranted that the said device/equipment/system and/or its component parts were fit for said purpose. Plaintiff used the said device/equipment/system and/or its component parts for the particular purpose for which selection had been made by the defendants. Plaintiff avers that said defendants breached the aforesaid **implied warranty** in that said device/equipment/system and/or its component parts were not reasonably fit for the use for which they were selected. As a proximate result of the aforesaid breach of warranty by each of the aforesaid defendants, the plaintiff was caused to suffer the injuries and damages set out herein.

11. Said named and/or fictitious party defendants **Depuy, Inc.; Depuy International Limited; Depuy Synthes Products, LLC; Depuy Orthopaedics, Inc.; Johnson & Johnson; Johnson & Johnson Services, Inc.; Johnson & Johnson International; Andrew Cook; and/or Fictitious Defendants I, J, K, L, M, N or O** listed and described in the caption hereof, were in the business of leasing, selling or distributing the said device/equipment/system and/or its component parts in the State of Alabama and said defendants were merchants with respect to such goods. The said defendants expressly warranted that said device/equipment/system and/or its component parts would be safe when used in a foreseeable manner. Defendants breached said **express warranty** in that said device/equipment/system and/or its component parts were not reasonably safe when being used in a foreseeable manner. As a proximate result of the aforesaid breach of warranty by each of the aforesaid defendants, the plaintiff was caused to suffer the injuries and damages set out herein.

12. At said time, said HIP IMPLANT DEVICES, PRODUCTS OR COMPONENTS was/were defective and unsafe and this information was known to the Defendants **Depuy, Inc.; Depuy International Limited; Depuy Synthes Products, LLC; Depuy Orthopaedics, Inc.; Johnson & Johnson; Johnson & Johnson Services, Inc.; Johnson & Johnson International; Andrew Cook; and/or Fictitious Defendants I, J, K, L, M, N or O**; and was knowingly and fraudulently withheld from PATIENT, Plaintiffs, the public and the medical profession. Furthermore, the said Defendants knowingly and fraudulently engaged in improper actions, financial transactions and/or communications to induce physicians to undertake "off label" use of said HIP IMPLANT DEVICES, PRODUCTS OR COMPONENTS and/or to mislead physicians into using their products when said products were defective and unsafe.

13. As a result of the combined and concurring actions and conduct of the named and fictitious party defendants, Plaintiffs suffered the damages and injuries hereinafter alleged in Paragraph 34.

## COUNT III
## FRAUD, CONCEALMENT AND MISREPRESENTATION

14. Plaintiffs incorporate by reference and reallege all allegations and contentions heretofore

pled in the complaint is if fully set out herein.

15. DePuy's ASR Hip Implant Has Not Been Adequately Tested or Approved By The FDA.

16. The hip joint is where the femur connects to the pelvis. The joint is made up of the femoral head (a ball-like structure at the very top of the femur) rotating within the acetabulum (a cup-like structure at the bottom of the pelvis.) In a healthy hip, both the femur and the acetabulum are strong and the rotation of the bones against each other is cushioned and lubricated by cartilage and fluids. Over time, age and wear break down the cartilage. This forces the bone of the femur to rub directly against the bone of the acetabulum, and it causes severe pain and immobility.

17. A total hip replacement replaces the body's natural joint with an artificial one, usually made out of metal and plastic. A typical total hip replacement system consists of four separate components: (1) a femoral stem (labeled as "hip implant" in the diagram to the left), (2) a femoral head, and (3) a liner, and (4) an acetabular shell. After the surgeon hollows out a patient's femur bone, the femoral stem is implanted. The femoral head is a metal ball that is fixed on top of the femoral stem. The femoral head forms the hip joint when it is placed inside the polyethylene liner and acetabular shell.

18. The DePuy ASR hip implant that is at issue in this lawsuit has a different design, one that puts the metal femoral ball directly in contact with a metal acetabular cup. The design of the DePuy ASR hip is unorthodox, it was not sufficiently tested by the Defendants, and it has never been approved by the FDA as being safe or effective.

19. The acronym "ASR" stands for "Articular Surface Replacement." ASR is a surgical procedure that is an alternative to a total hip replacement procedure. In an ASR procedure, only the articular surface of the hip (the acetabular cup and the femoral ball) are replaced. On the other hand, a total hip replacement includes not only the acetabular cup and femoral ball, but also a large piece of metal (known as a femoral stem) that is implanted deep into the patient's femur and on which the femoral ball is affixed.

20. If DePuy wanted to market its ASR Hip for use in an ASR surgery, the FDA would have required DePuy to conduct clinical trials and prove that the product is both safe and effective. DePuy would then need to submit an application asking the FDA to approve the device, and it would be required to monitor the long-term safety and performance of the product once it was placed on the market. DePuy wanted to market its ASR Hip System in the United States, but it didn't want to go through the trouble or incur the expense of clinical trials or obtaining FDA approval.

21. Instead of assuring the safety of the ASR through clinical trials, DePuy relied on a loophole in FDA regulations that allows DePuy to market its ASR Hip without conducting any clinical trials and without ever obtaining

FDA approval. DePuy told the FDA that the components of the ASR Hip System would be used for total hip replacements, not for ASR surgeries. DePuy then told the FDA that its design was "substantially equivalent" to other hip products on the market. By doing so, DePuy was able to skirt the FDA regulations that would have required clinical trials and FDA approval, and it was able to put the ASR Hip System on the market in the United States ostensibly for use in an application for which it was not designed, a total hip replacement. To this day, despite being implanted in the bodies of thousands of Americans who believed that the devices are safe, DePuy's ASR Hip System has never been approved by the FDA as being safe or effective.

22. While most hip replacements use a polyethylene plastic acetabular cup, DePuy's ASR Hip System has a critical difference: it uses a metal acetabular cup. By using a metal acetabular cup and a metal femoral ball, the ASR Hip forces metal to rub against metal with the full weight and pressure of the human body. Because of Defendants' defective design for the ASR Hip, hundreds of patients have been forced to undergo surgeries to replace the failed hip implants. After Hundreds of Failures, DePuy And The FDA Finally Recalled The ASR Hip.

23. It wasn't long after DePuy launched the ASR hip in 2005 that reports of failures began flooding into DePuy. For example, just a few months after it began selling the ASR Hip System, in May 2006, DePuy received a complaint from a doctor who reported that the ASR acetabular cup had failed in a patient who had to undergo a revision surgery to replace the defective cup. DePuy closed its investigation of this complaint, finding that "corrective action is not indicated."

24. DePuy would go on to receive hundreds of similar complaints reporting that the ASR Hip System had failed due to premature loosening of the acetabular cup and that the failure had forced patients to undergo painful and risky surgeries to remove and replace the failed hip component. As the New York Times chart to the right shows, by 2007 over 100 reports had been sent to DePuy. By the end of 2008, that had skyrocketed to well over 300 reports.

25. By the time DePuy sold the ASR Hip System to Plaintiffs DePuy had received several complaints that the ASR hip had failed. Consequently, DePuy was fully aware that the ASR Hip System was defective and that patients already had been injured by that defect. This is confirmed by Dr. Stephen Graves, the Director of the Australian Orthopaedic Association's National Joint Replacement Registry. Dr. Graves believes that the data available to DePuy had shown for some time that the ASR had been failing early at a significantly higher rate than its competitors' devices.

26. The defect in the ASR hip appears to be design-related. Several orthopedic specialists have opined that the design of the ASR acetabular cup, which is shallower than acetabular cups made by other companies, is at the heart of the hip implant's problems. For example, Dr. Harlan C. Amstutz, an orthopedic surgeon in Los Angeles who designs hip implants said that he believed that the design of the ASR

hip is prone to problems.

27. Even the surgeon who designed the ASR hip, Dr. Thomas Schmalzried, admitted that DePuy had known since at least 2008 that the ASR cup may have problems. The New York Times reported in March 2010 that "Dr. Schmalzried said in an interview last month that he and DePuy officials realized within the last two years that the ASR cup might be more of a challenge to implant properly than competing cups." According to Dr. Schmalzried, "The window for component position that is consistent for good, long-term clinical function is smaller for the ASR," than other cups.

28. Despite its knowledge that the ASR hip had a defect and that it had failed hundreds of times, causing hundreds of patients to undergo the agony of another surgery, DePuy continued selling the defective hip implant. In so doing, DePuy actively concealed the known defect from doctors and patients and misrepresented that that the ASR Hip System was a safe and effective medical device.

29. DePuy's reason to conceal the defect in its ASR Hip System is clear. In 2009 alone, DePuy brought in more than $5.4 billion in sales. Hip implant sales are critically important to DePuy's parent company, Johnson & Johnson, and DePuy is one of Johnson & Johnson's most profitable business groups. In 2006, DePuy was faced with a critical defect in one of its hip implant systems. The last thing DePuy wanted to do was to admit that these popular products had a critical defect that could cause a premature failure, forcing patients to have to undergo another painful surgery. Focused on corporate profits, and at the expense of patient safety, DePuy decided that it would not issue an embarrassing recall when it learned of the defects with its ASR Hip System in 2006. Moreover, motivated by greed rather than patient safety, DePuy did not even stop selling ASR Hip System. Instead, it continued to manufacture the hip implants and it continued to sell them to unsuspecting patients

30. By early 2010, DePuy could no longer keep its secret. By then, the ASR hip had failed in 600 people, most of whom were forced to undergo a painful surgery to remove the defective ASR hip and replace it. But even after hundreds of people had been severely injured by its product, DePuy still didn't do the right thing by recalling its ASR hips.

31. In March 2010, DePuy finally began to disclose some of the alarming information about the ASR hip. It sent a letter to doctors warning them of the increased failure rate associated with the ASR Hip System. DePuy admitted that the ASR Hip System suffered from a "higher than expected revision rate," and that data compiled by the Australian National Joint Replacement Registry showed that 5.4 percent of the ASR Hips implanted had been surgically replaced after only three years and that the expected failure rate could be as high as 10 percent. The letter also stated that DePuy was planning to stop selling the ASR hip, allegedly because of "declining demand."

32. On July 17, 2010, the FDA announced a nationwide recall related to the DePuy ASR Hip System. The FDA classified this recall as a Class 2 Recall. A Class 2 Recall includes situations where exposure to a violative product could cause a situation in which use of or exposure to a violative product may cause medically reversible adverse health consequences.

33. Most recently, on August 25, 2010, DePuy confirmed that in the first five years after implant alone, 13 percent of its ASR hip implants have failed and had to be surgically removed. DePuy also confirmed that at least 90,000 people have had ASR hips implanted in their bodies, meaning that over time, at least 11,700 people will have an ASR hip failure and be forced to undergo a painful surgery to remove and replace it. Plaintiff's ASR Hip Was Defective And Failed, Forcing Her To Undergo Additional Painful And Risky Surgeries.

## DAMAGES

34. Plaintiffs allege that the conduct of each and all of the named and fictitious party defendants, including the above described fictitious party defendants combined and concurred and proximately caused the PLAINTIFFS' INJURIES up to, on and after AUGUST 10, 2020 as follows:
    a. Plaintiff Sue McCrimmon has been caused and will be caused to suffer and incur:
        (1) Permanent and irreversible crippling and disabling neurological, neurovascular, orthopedic, hip and leg injuries and medical complications;
        (2) Mental and emotional pain, suffering and anguish;
        (3) Extensive and ongoing medical care, treatment and surgeries;
        (4) Extensive and ongoing medical bills and expenses;
    b. Plaintiff Daniel McCrimmon has been caused and will be caused to suffer the loss of his wife's services, affection and consortium.

On the basis of the foregoing, Plaintiffs request that the jury selected to hear this case render a verdict (1) for Plaintiff Sue McCrimmon and against the defendants **Depuy, Inc.; Depuy International Limited; Depuy Synthes Products, LLC; Depuy Orthopaedics, Inc.; Johnson & Johnson; Johnson & Johnson Services, Inc.; Johnson & Johnson International; Andrew Cook; and/or Fictitious Defendants I, J, K, L, M, N or O jointly and severally** for compensatory damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00); (2) for Plaintiff Daniel McCrimmon and against the defendants **Depuy, Inc.; Depuy International Limited; Depuy Synthes Products, LLC; Depuy Orthopaedics, Inc.; Johnson & Johnson; Johnson & Johnson Services, Inc.; Johnson & Johnson International; Andrew Cook; and/or Fictitious Defendants I, J, K, L, M, N or O jointly and severally** for loss of consortium compensatory damages in the amount of ONE MILLION DOLLARS ($1,000,000.00); (3) for Plaintiffs Sue McCrimmon and Daniel McCrimmon against the defendants **Depuy, Inc.; Depuy International Limited; Depuy Synthes Products, LLC; Depuy Orthopaedics, Inc.; Johnson & Johnson; Johnson & Johnson Services, Inc.; Johnson & Johnson International; Andrew Cook; and/or Fictitious Defendants I, J, K, L, M, N or O jointly and severally** for punitive damages in the amount of FIVE MILLION DOLLARS ($5,000,000.00). Further, Plaintiffs request that the Court enter judgment consistent

with the jury's verdict and that it also award Plaintiff interest from the date of judgment and the costs incurred by the Court in managing this lawsuit.

*/s/ Frank O. Hanson, Jr.*
Frank O. Hanson, Jr. (HANOO7)

*/s/ Marshall E. Smith III*
Marshall E. Smith III (SMI008)

**COUNSEL FOR PLAINTIFF:**
**222 20th St. No.**
**Ste. 800**
**Birmingham, AL 35203**
fohatty@bellsouth.net

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by struck jury in this cause.

*/s/ Frank O. Hanson, Jr.*
Of Counsel

**REQUEST FOR SERVICE BY CERTIFIED MAIL**

Pursuant to Alabama Rules of Civil Procedure Plaintiffs request that the foregoing Summons and Complaint be served by Certified Mail.

*/s/ Frank O. Hanson, Jr.*
Of Counsel